IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRIAN H. HARRISON,                    :

     Plaintiff,                      :

vs.                                   :   CIVIL ACTION 06-0359-WS-M

GRANTT CULLIVER, et al.               :

     Defendants.                     :

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, an Alabama prison inmate proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants, Warden Grantt Culliver, Deputy Warden Tony Patterson, and Correctional Officer Supervisor David Craft (Docs. 23, 24, 50, 52), and Plaintiff's Opposition thereto (Docs. 28, 55).  After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.  In addition, having found herein that Plaintiff's allegations do not establish a constitutional violation, Plaintiff's objections to the Court's order denying his request for admissions (Doc. 66), which the Court construes as a motion to reconsider, is due to be denied as moot.

I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.  On April 15, 2006, while incarcerated at Holman Correctional Facility ("Holman"), Plaintiff was forced to attend a Christian worship service held in the exercise yard of the prison. (Doc. 1 at 4).  Plaintiff had been forced to attend a similar Christian worship service in the summer of 2005.[1]  (Id. at 11).  In addition, in May, 2005, Plaintiff attended a "GED" graduation ceremony conducted by a local community college at the prison, and the guest speaker opened with a Christian prayer.  (Doc. 38 at 2).  Plaintiff was neither warned nor given an opportunity to leave before the prayer was offered.  (Id.).

Plaintiff, who is a pagan, actively practices Odinism,[2] which

_____

[1] Plaintiff also alleges that he was forced to attend a similar Christian worship service in 2003.  Because Plaintiff filed his Complaint in this action on June 9, 2006, any claim related to his incarceration prior to June 9, 2004, is time barred and will not be considered herein.  See Burt v. Martin, 193 Fed. Appx. 829, 830 (11th Cir. 2006) ("In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all § 1983 actions filed in federal court in that state," which, in Alabama, is two years.).  "A cause of action accrues for purposes of determining when the statute of limitations period began to run when the plaintiff knew or should have known of his injury and its cause."  Id.

[2] Odinism is an ancient, pre-Christian faith also known as Asatru.  For an overview of Odinism, see Smith v. Allen, 502 F.3d 1255, 1261 (11th Cir. 2007) (citing Rust v. Clarke, 883 F. Supp. 1293, 1297-98 (D. Neb. 1995); Borzych v. Frank, 340 F. Supp. 2d 955, 960 (W.D. Wis. 2004); and Odinic Rite, Questions and Answers

precludes him from participating in any other faith, particularly
Christianity.  (Id. at 9, 12).  According to Plaintiff, even
being "within the hearing of Christian witnessing" is against his
faith and will cause him "to suffer torture in the Underworld."
(Id. at 16).

   On June 9, 2006, Plaintiff filed the present § 1983 action
asserting a First Amendment claim against Defendants, Warden
Grantt Culliver, Deputy Warden Tony Patterson, and Correctional
Officer Supervisor David Craft for violating his right to the
free exercise of his religion by forcing him to attend the
Christian worship services conducted on the exercise yard in the
summers of 2005 and 2006.  (Doc. 1 at 11).  Plaintiff also
asserts that Defendants' actions violated his statutory rights
under the Religious Land Use and Institutionalized Persons Act of
2000 ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., by imposing a
substantial burden on the exercise of his religion.  (Id. at 9).
On December 21, 2006, Plaintiff Amended his Complaint to assert
that Defendant Culliver violated his rights under the
Establishment Clause of the First Amendment by authorizing a
Christian prayer at the "GED" graduation ceremony in May, 2005.
(Doc. 38 at 2).  Plaintiff seeks compensatory and punitive
damages against Defendants in their individual capacities, as
well as injunctive relief.  (Doc. 1 at 17-19).

   In their Answers and Special Reports filed on September 25,

_____

About the OR and Odinism, http://www.odinic-rite.org/qa.htm)).

2006, April 6, 2007, and April 17, 2007, Defendants deny
Plaintiff's allegations and assert the defenses of qualified and
absolute immunity. (Docs. 23, 24, 50, 52). According to
Defendants, religious programming at the prison is authorized in
accordance with Administrative Regulations 333[3] and 313 to allow
all inmates to practice their declared faith. (Doc. 50, att. 1,
att. 2, att. 3). The facility has approved over 200 religious
volunteers of which a number are members of various religious
sects. (Doc. 50, att. 1). Defendants do not force any religion
on any person. (Id.).

Defendants concede that, on April 15, 2006, the entire general
inmate population at Holman prison was taken to the exercise yard
where a Christian worship service was being conducted and where
the evening meal was being provided by the Christian ministry.

---

[3] AR 333 is a lengthy regulation consisting of twenty-five
pages of detailed procedures to be followed by the prison staff
in accommodating a multitude of religious practices followed by
inmates of many different religions, including Buddhism,
Catholicism, Five Percent Nation of Islam, Jehovah's Witness,
Judaism, Moorish Science Temple of America, Nation of Islam,
Native American, Protestant, Seventh-Day Adventist, Sunni
Muslim, and Wiccan. The regulation requires accommodation of
religious celebrations, religious food, religious medallions,
caps, prayer oils, incense burning, prayer beads, prayer rugs,
religious space indoors, ceremonial grounds outdoors, prayer
shawls, religious literature and media, outdoor vegetation
(including cultivation of religious trees and vegetables),
storage space for religious items, prayer pipes, herbs, drums,
rocks, sticks, and fire. The regulation also recognizes many
dates throughout the year which have particular religious
significance to each group. On those dates, the prison staff
must accommodate seemingly complex rituals and celebrations in
addition to the routine ritual practices that occur daily,
weekly, or monthly. (Doc. 50, att. 2).

(Doc. 23, att. 1 at 1-2).  Defendants state that the worship service was being held in one part of the exercise yard and included music, testimony, and a sermon.  (<u>Id.</u>).  Inmates were not required to participate in the worship service.  (<u>Id.</u>).  However, they were required not to be disruptive to the service.  (<u>Id.</u> at 4).  According to Defendants, it was necessary to confine all of the inmates in the exercise yard to facilitate the administration of the evening meal and to ensure security in the facility during the service.  (<u>Id.</u>).  In 2005, a similar service was conducted at the prison, and the general population inmates were confined in the exercise yard to ensure security of the facility during that service.  (Doc. 50 at 4).  On the occasion of the "GED" graduation ceremony in 2005, Defendants concede that the guest speaker offered a Christian prayer.  However, Defendants maintain that the ceremony was a secular event, and attendance was not mandatory.  (Doc. 50 att. 1).

On February 6, 2008, the Court ordered that Defendants' Answers and Special Reports be treated as a Motion for Summary Judgment.  (Doc. 58).  On October 12, 2006, and January 11, 2008, Plaintiff filed responses in opposition to Defendants' motion, reasserting his First Amendment claim against Defendants.  (Docs. 28, 55).  Defendants' motion and Plaintiff's responses thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment,

the Court begins with these basic principles.  The <u>Federal Rules</u> <u>of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed.</u> <u>R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary

judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

<u>III. DISCUSSION</u>

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation and statutory violation arising out of his forced attendance at various Christian events conducted at the prison. (Doc. 1). Defendants deny that they violated Plaintiff's First Amendment or statutory rights and further assert the defenses of absolute and qualified immunity.[4]   (Doc. 52).

Section 1983 provides in pertinent part that:

_____

[4]Plaintiff asserts his First Amendment claim against Defendants in their individual capacities only. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Dalrymple v. Reno</u>, 334 F.3d 991, 994 (11th Cir. 2003) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." <u>Dalrymple</u>, 334 F.3d at 995 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)). Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201.

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).  For each of the reasons set forth

below, Plaintiff's § 1983 claims fail as a matter of law.

I.    Plaintiff's claims for Injunctive and Declaratory
      Relief.

In this action, Plaintiff seeks injunctive and declaratory

relief seeking "not to be forced into Christian faith

participation."  (Doc. 1 at 17).  Subsequent to filing his

Complaint, Plaintiff was transferred from Holman prison to

Fountain Correctional Facility.  (Doc. 54).

"[A]n inmate's request for injunctive and declaratory relief

in a section 1983 action fails to present a case or controversy

once an inmate has been transferred."  See Boglin v. Weaver, 2001

WL 228172, *9 (S.D. Ala. 2001) (unreported) (citing Spears v.

Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1989)).  Therefore,

Plaintiff's claims for injunctive and declaratory relief related

to his incarceration at Holman prison are moot.

II.   Plaintiff's RLUIPA claim.

Plaintiff claims that Defendants' actions, as alleged,

violate § 3 of the RLUIPA, 42 U.S.C. § 2000cc-1, which provides

in pertinent part:

> No government shall impose a substantial
> burden on the religious exercise of a person
> residing in or confined to an institution, as
> defined in section 1997 of this title, even
> if the burden results from a rule of general
> applicability, unless the government
> demonstrates that imposition of the burden on
> that person–
>
> > (**1**) is in furtherance of a
> > compelling governmental interest; and
> >
> > (**2**) is the least restrictive means
> > of furthering that compelling
> > governmental interest.

42 U.S.C. § 2000cc-1.[5]

If violated, § 3 of the RLUIPA creates a private cause of action for a prison inmate against the government for "appropriate relief," which includes injunctive and monetary relief.[6] Smith, 502 F.3d 1255, 1271 (11th Cir. 2007), 502 F.3d at 1271 (citing 42 U.S.C. § 2000cc-2(a)). However, in Smith, the Eleventh Circuit held that § 3 of the RLUIPA does not create a private cause of action against defendants in their *individual* capacities for monetary damages. Id., 502 F.3d. at 1275.

In the present action, Plaintiff has sued Defendants in their individual capacities only. (Doc. 1 at 5). Because

---

[5] For a history of the RLUIPA, see Smith, 502 F.3d at 1265-66.

[6] A prisoner seeking a monetary reward under the RLUIPA is subject to the limiting language of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), and, thus, is generally limited to nominal damages. Smith, 502 F.3d at 1271.

Plaintiff's claim for damages under the RLUIPA against Defendants in their individual capacities cannot proceed, Defendants are entitled to judgment as a matter of law on that claim.

In addition, Defendants are entitled to judgment as a matter of law on Plaintiff's RLUIPA claim because Plaintiff's allegations fail to state a claim upon which relief could be granted. "To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Smith, 502 F.3d at 1276. The term "substantial burden" has been defined as "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." Id. at 1277. "[T]he government's action must be 'more than ... incidental' and 'must place more than an inconvenience on religious exercise.'" Id. "That is, to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice." Id.

In this action, Plaintiff does not allege that he has ever been prevented from exercising his own religion, Odinism. Plaintiff does not allege that he has ever been required to engage in or perform any ritual, practice, or act of worship of any other religion. Rather, Plaintiff complains that he was confined on at least three occasions "within the hearing" of Christianity, which contravenes Odinism. (Doc. 1 at 16). Plaintiff's argument is unavailing.

The reality of prison is that it is an environment with finite space, limited resources, and an array of religious beliefs.  Daily, the prison staff is charged with accommodating a multitude of competing, and even conflicting, religions and their attendant worship practices and beliefs, while at the same time managing the business of a prison.  (Doc. 50, att. 2, att. 3).  In that environment, exposure by one inmate to the worship practices of another inmate is an inevitable part of prison life.  Assuming Plaintiff's allegations as true, he has failed to demonstrate that his exposure to the sight and sound of other inmates practicing their religion on the exercise yard, or his exposure to a Christian prayer, significantly hampered his own religious observance.  Because Plaintiff has failed to establish a *prima facie* case under the RLUIPA, Defendants are entitled to summary judgment on that claim for this reason as well.

III. <u>Plaintiff's First Amendment Claim</u>.

The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S.C.A. Const. Amend. I

A.  <u>Plaintiff's Free Exercise Claim</u>.

In <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987),

the United States Supreme Court recognized that "'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" (Quoting Bell v. Wolfish, 441 U.S. 520, 545 (1979)).  "Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." Id. (citations omitted).  However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (citations omitted).

> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." Bell v. Wolfish, supra, 441 U.S., at 562, 99 S. Ct., at 1886.  See Turner v. Safley, supra, 482 U.S., at 86-87, 107 S. Ct., at 2260-2261.  To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. . . . "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, supra, 482 U.S., at 89, 107 S. Ct., at 2261. This approach ensures the ability of corrections officials "to anticipate security problems and to adopt innovative solutions to the intractable

> problems of prison administration," <u>ibid.</u>,
> and avoids unnecessary intrusion of the
> judiciary into problems particularly ill
> suited to "resolution by decree." . . .

<u>Id.</u> at 349.

In <u>Asad v. Bush</u>, 170 Fed. Appx. 668, 671 (11th Cir. 2006),

the Eleventh Circuit further stated:

> We give deference to the decisions of prison
> officials, and we employ a "reasonableness"
> test to determine whether a regulation
> infringes constitutional rights. <u>O'Lone</u>, 482
> U.S. at 349, 107 S. Ct. 2400. The Supreme
> Court has established four factors to be
> considered in determining the reasonableness
> of a regulation: "(1) whether the regulation
> has a valid, rational connection to a
> legitimate governmental interest; (2) whether
> alternative means are open to inmates to
> exercise the asserted right; (3) what impact
> an accommodation of the right would have on
> guards and inmates and prison resources; and
> (4) whether there are ready alternatives to
> the regulation." <u>Overton v. Bazzetta</u>, 539
> U.S. 126, 136, 123 S. Ct. 2162, 156 L. Ed. 2d
> 162 (2003) (citation omitted). The fourth
> factor asks whether "a prisoner has pointed
> to some obvious regulatory alternative that
> fully accommodates the asserted right while
> not imposing more than a <u>de minimis</u> cost to
> the valid peneological goal." <u>Id.</u>

<u>Asad</u>, 170 Fed. Appx. at 671 (holding that Defendants did not

violate Plaintiff's First Amendment rights, nor his rights under

the RLUIPA, by requiring Muslim inmates to conduct their group

prayer service at an allegedly improper time of day).

In <u>Asad</u>, the evidence showed that, because of daylight

savings time, the group prayer service could not be held at the

precise hour of the day compelled by Plaintiff's religious

beliefs.  However, Muslim inmates were allowed to pray
individually in their cells at the appropriate time.  The
Eleventh Circuit stated:

> Here, Asad failed to state a First Amendment
> claim because the guards' actions were
> reasonable and had a valid relationship to a
> legitimate peneological interest, namely, the
> need to maintain control over the inmates and
> provide security.  Several inmates engaged in
> a heated discussion with prison guards and
> insisted on holding their services under
> circumstances that were not approved by the
> guards.  By permitting inmates to conduct
> prayers at the requested time individually,
> the guards offered an alternative that would
> enable the inmates to exercise their rights.

Id. at 671-72.

As discussed above, the practice challenged by Plaintiff in
this action is Defendants' practice of allowing, and even
forcing, inmates to be exposed to the practice of other
religions.  Specifically, as discussed above, Plaintiff points to
the events of the summers of 2005 and 2006 when Defendants
confined all of the general population inmates in the exercise
yard during a Christian worship service and, in 2005, when
Defendants allowed a visiting speaker from a community college to
offer a Christian prayer during a graduation ceremony.
Considering the factors set forth above and the deference
accorded regulatory decisions of prison administrators, the Court
finds that Defendants' practice is reasonable under the
circumstances.

First, although it is undisputed that Plaintiff was exposed

to the Christian worship services and prayer as alleged,
Plaintiff's unfortunate exposure on those occasions had a valid,
rational connection to the legitimate government interest of
managing and securing the prison while accommodating the
religious rights of another group of prison inmates, those
practicing Christianity.  Second, although Plaintiff argues that
complete non-exposure to other religions is essential to his
beliefs, the Supreme Court recognized in O'Lone that a inmate's
stringent religious requirements can "make it extraordinarily
difficult for prison officials to assure" that his particular
belief can be accommodated.  Id., 482 U.S. at 351.  In O'Lone,
the court stated: "While we in no way minimize the central
importance of Jumu'ah [a weekly Muslim congregational service] to
respondents, we are unwilling to hold that prison officials are
required by the Constitution to sacrifice legitimate penological
objectives to that end."  Id. at 351-52.  The court considered,
instead, whether the inmates retained "the ability to participate
in other Muslim religious ceremonies," stating: "[t]he record
establishes that respondents are not deprived of all forms of
religious exercise, but instead freely observe a number of their
religious obligations."  Id.  As discussed above, Plaintiff does
not allege that he has been deprived of any form of religious
exercise of Odinism, except freedom from exposure to other
religions.  The ability of Plaintiff "to participate in other
religious observances of [his] faith supports the conclusion that

the restrictions at issue here were reasonable." <u>Id.</u>

Third, considering the impact that accommodation of Plaintiff's asserted right to be completely free from exposure to "any other religion" (Doc. 1 at 16), would have on other inmates, on prison personnel, and on allocation of prison resources generally, the Court is satisfied, for the reasons set forth in relation to Plaintiff's RLUIPA claim, that the burden of such an undertaking would be unduly onerous, if even possible. Indeed, considering the final prong of the reasonableness analysis, Plaintiff has made no suggestion as to how his religious practice of complete non-exposure to other religions could be accommodated at a *de minimis* cost. <u>Asad</u>, 170 Fed. Appx. at 671 (citing <u>Overton</u>, 539 U.S. at 136). "The burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." <u>Overton</u>, 539 U.S. at 132. This Plaintiff has failed to do.

As the Supreme Court stated in <u>O'Lone</u>, "[w]e take this opportunity to reaffirm our refusal, even where claims are made under the First Amendment, to 'substitute our judgment on . . . difficult and sensitive matters of institutional administration,' . . . for the determinations of those charged with the formidable task of running a prison." <u>Id.</u>, 482 U.S. at 353 (citations omitted). The policy alleged to infringe Plaintiff's constitutional rights in the present action is reasonable under the <u>Turner</u> analysis and, thus, does not offend the Free Exercise

Clause of the First Amendment to the United States Constitution.

> B.   Plaintiff's Establishment Clause Claim.

Plaintiff also claims that Defendants' practice of exposing him to other religions violates the Establish Clause of the First Amendment.  The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion. . . ." U.S.C.A. Const. Amend. 1.  "This restriction has been made applicable to states, as well as state-created entities and their employees, through the Due Process Clause of the Fourteenth Amendment."  Brunskill v. Boyd, 141 Fed. Appx. 771, 775 (11th Cir. 2005) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1284 (11th Cir. 2004)).  "The Establishment Clause applies not only to state statutes, but acts and decisions of individual government actors . . ."  Id. (citations omitted).

In Lemon v. Kurtzman, 403 U.S. 602, 612-613 (1971), the Supreme Court set forth three factors for use in determining whether a challenged practice is permissible under the Establishment Clause.  A state action violates the Establishment Clause if: (1) it does not have a secular purpose; (2) its primary effect is to advance or inhibit religion; or (3) it fosters an excessive entanglement with religion.  "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Glassroth v. Moore, 335 F.3d 1282, 1299 n.3 (11th Cir. 2003) (citations omitted).

Plaintiff's allegations fail the <u>Lemon</u> test.  First, as discussed above, Plaintiff's confinement in the exercise yard during two Christian worship services served a secular purpose: it facilitated the management and security of the prison during services accommodating the religious rights of the Christian inmate population.  Moreover, the challenged graduation ceremony was a secular event conducted by a local community college, which Plaintiff was not required to attend.

Second, Defendants' actions on these occasions neither advanced nor inhibited religion but, rather, facilitated prison management and security during the events.  Plaintiff does not allege that he was forced to pray, worship, or even pay attention at any of the challenged events.  Indeed, at the worship services conducted on the exercise yard, the inmates were free to do as they pleased, as long as they did not disrupt the service.  (Doc. 23, att. 1).  "Accommodating religious practices that does not amount to an endorsement is not a violation of the Establishment Clause."  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 976 (9th Cir. 2004) (citing <u>Hobbie v. Unemployment Appeals Comm'n of Fla.</u>, 480 U.S. 136, 144-45 (1987) ("This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.").

Finally, Plaintiff's allegations do not support an inference of excessive government entanglement with Christianity or an

institutional preference for Christianity.  Although Plaintiff alleges that Defendant Patterson openly advocated a personal preference for Christianity (Doc. 1 at 13), there is no evidence that the decision to confine all of the inmates on the exercise yard during the Christian worship services was made by anyone other than Defendant Warden Culliver.  (Doc. 23, att. 1). Indeed, Plaintiff states that, when he questioned Patterson about why he could not remain in his dorm during the Christian worship service, Patterson told him that "every inmate was [being] forced on the yard for security reasons."  (Id.).  Whatever Defendant Patterson's personal religious beliefs, there is no evidence of an institutional preference for, or entanglement with, Christianity.  Therefore, there is no violation of the Establishment Clause.

Inasmuch as Plaintiff has failed to establish a constitutional violation, Defendants' Motion for Summary Judgment is due to be granted.

IV.  CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants Culliver, Patterson, and Craft be granted (Docs. 23, 24, 50, 52), that Plaintiff's claims against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants on all claims.  In addition, it is recommended that Plaintiff's objections to the Court's order denying his request for admissions (Doc. 66), which

the Court construes as a motion to reconsider, be denied as moot.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   *See* 28 U.S.C. § 636(b)(1)(c); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this

action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 24th day of June, 2008.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE